Good morning, Ganners. Good morning, Ms. Spector. On behalf of Plaintiff Appellant Anthony Moreno, I would like to reserve five minutes of my time for rebuttal. You bet. I'll just tell you both that you're welcome to reserve whatever you want to reserve. Okay. You're going to keep track of your own time, please, on the clock. Okay. And that's October. Okay, got it. You bet. May it please the Court, this case involves misrepresentations on the labels of hand sanitizer. Specifically, it involves the prominent front label statement that the products kill 99.99% of germs. This statement is false on its face. It is the longstanding law of this circuit that a manufacturer must truthfully label its products. The District Court's decision in this case upends that law by shifting the burden from product manufacturers to accurately label their products to consumers of those products to ascertain during the purchase process whether the label statements are false. May I ask a question at the top of the decision tree here? Do you agree that we should understand and that a reasonable consumer would understand? We're talking about germs on your hands. The allegations in the second amended complaint do not allege anything other than killing 99.99% of germs. Yes. It wasn't just your question. Yes. That is a yes. Okay, so then can you go to the asterisk, because I think pretty quickly my next part of my decision tree is the asterisk. Certainly. Okay, so the asterisk, the front label has an asterisk, which leads to a label on the back statement that says effective at eliminating more than or not more than, depending on the product, 99.99% of many common harmful germs and bacteria in as little as 15 seconds. This back label statement, as led in the complaint, is variously included in very small print. It's included against a colored background. It may be printed perpendicular to the rest of the information on the label. If your honors look at the supplemental filings by defendant, you'll see that the back label is, in fact, difficult for a consumer to read, which is as pled. So could I get you to focus on the asterisk? I'm just trying to figure out what your position is on whether it's reasonable to expect that a reasonable consumer would see that asterisk and sort of import or know that there's more on the back that needs to be considered. What's your position on that, please? Two things on that. First, as pled, plaintiff states that he doesn't recall whether he saw the asterisk, and if it did, it did not ameliorate the falsity of the front panel representation. Secondly, under the... Is the issue what a particular plaintiff would know or what a reasonable consumer would know? It's what a reasonable consumer would know. And under the standard articulated by this court in Williams v. Gerber, where a back label statement, or in that case a statement on the side label of the ingredient list, is included in fine print, a reasonable consumer is not charged with the information on a fine print label. In addition, this court recently, in Moore v. Trader Joe's, stated that the Seventh Circuit was understandably concerned about a manufacturer who makes a label statement on the front and then tries to disclaim that label statement with a qualifier on the back label. So it is the position of plaintiff appellant that the back label statement is a question of fact. Whether or not consumers viewed it and whether they are charged with a certain understanding of what the meaning of that back label statement is, is a question of fact that was not appropriate for resolution on a motion to dismiss. Do you think a reasonable consumer would not know what an asterisk means? I think that that is also a question of fact. I think that reasonable consumers, if you're asking my personal opinion, likely know what an asterisk means. Whether they see the asterisk during the quick purchasing process, especially during a process where they're purchasing a low-cost, everyday good, whether they note that asterisk and would turn a product over and read the statement on the back, that would be a question of fact. Well, that's not relevant. I mean, a reasonable consumer, if an asterisk means this is a signal to go somewhere else for further information, if the customer did not do that, that's not reasonable. That's not what the court holds in Williams v. Gerber, and it's also not necessarily what the court holds in Morris v. Morris Pet Care, where the court finds that where a disclaimer or an additional statement conflicts with a front-label statement rather than clarifies or confirms it, that it is not reasonable to impute the knowledge of that second statement into the front-label representation. What about Moore v. Trader Joe's? It looked like everything on the back of the labeled ingredient list, everything. Certainly. Well, Moore v. Trader Joe's is distinct from this case factually because, as the court recognized, that case involved a niche specialty product which commanded a high price point, and there were specific factors at issue in that case that would signal to a consumer that it could not be 100% Manuka honey. But the Moore v. Trader Joe's court drew an important distinction between the specialty product at issue in that case and the low-cost everyday good at issue in the Seventh Circuit's decision in Bell v. Public Supermarket. That's right. Can I interrupt right here? Sure. I think your point about distinguishing Trader Joe's is well taken, so at least for purposes of this conversation, I think it is. But you said something in the preceding sentence or paragraph, if we get a chance, about the back label confirming, the thought of conflicting as opposed to confirming. Is it your position that the back label really conflicts as opposed to clarifying? We're talking about germs on your hands. We're talking about common germs on your hands. I'm not sure I see this conflicting. Can you address that, please? Sure. So things that have been found to be confirming are things like, for example, where there was in the Scandis case where there was a statement about gigabytes on the front and then there was a clarifying statement about what gigabytes actually means. That is determined to be clarifying. But where a back panel statement would take away from or seek to qualify what could otherwise be a misrepresented statement on the front, which is what we have in this case. Excuse me for interrupting, but I'm just worried about your time, and I think the rules are well established. I'm trying to figure out how you apply them here. I don't mean to be rude by interrupting, but could you focus on that? Certainly. We know what we've got in front of us. We know what the back label does. Why shouldn't I read it as, you know, the front label saying 99.9% of all germs and the back label explaining to me that we're talking about common germs, such as. . . How does that conflict? It requires the consumer to look beyond a misleading representation to try and ascertain additional information that would otherwise qualify a misleading front label representation. The court in Bell v. Public Supermarkets made clear that consumers of low-cost everyday goods make quick purchasing decisions and that they don't have time, as judges or lawyers do, to scrutinize every aspect of a label statement. And in referencing Williams v. Gerber, where the statement was small and difficult to read, the Bell court found that it couldn't determine for a low-cost everyday good on a motion to dismiss whether the back label statement would ameliorate the falsity of the front label representation, which is precisely the situation at issue before this court. If we were to say that a reasonable consumer would look to the back label qualification, is your position that that's false? It is the position that that is also false. The phrase, many common germs, that it effectively eliminates many common harmful germs in as little as 15 seconds claimed to plead throughout his second amended complaint that the products do not, in fact, eliminate most or many common harmful germs in as little as 15 seconds, and specifically describes numerous germs that are... It says 99% of many common germs. So they get to define what is many common germs, correct? Well, except this is an important point, because I think you say this both ways. I initially understood that the complaint made one allegation. I actually think it has two in there. I think the complaint also includes the allegation that the statement that 99.99% of common germs are killed by the substance is a false statement. That's correct, Your Honor. It includes that as well? It does, yes, Your Honor. Okay, and then you also, the complaint also separately pleads 99.99% of some germs on the hands, that that is false, they're both false. That both statements are false, that's right. That even if consumers did look to the back panel statement, which is not a fact that is pled in the complaint, that that statement is also false and misleading. I think this part got a little bit lost in your briefing. As it did on me, I had to go back a couple of times to figure out that those are both pled. Okay. So in case that's helpful to both of you. Thank you, Your Honor. David? Yeah, so first of all, I guess to me that whole back label statement is ambiguous. It can mean two things. One, it could mean that if there's 99, there's 100 species of germs, it will eliminate 99% of them. Or it could mean that if there's 100 virons of common cold, it will eliminate 99 virons. How do you interpret it? That's exactly why plaintiff posits that this is a question of fact that is not appropriate for resolution on a motion to dismiss. Because. First of all, to me, which way do you interpret it? I interpret first. I understand the distinction and what the ambiguity that I tried to. I think that there's multiple ambiguities in the back label statement. I agree with Your Honor that 99 eliminates 99.99% of common harmful germs and bacteria is amorphous in terms of the eyes of an ordinary consumer who doesn't have a scientific background. I don't have a specific understanding as to whether it eliminates, you know, everything but .01 species of bacteria and germs that are found on hands or whether it's, we're talking about specific strains of those bacteria or germs. I think that that is something that would have to be fleshed out in terms of consumer understanding. I think I understand the answer to the question, but here's my problem. Now, I'm not understanding why you think the ambiguity matters. If you've pled, if it can be read two ways, and I tend to think it can be. But the pleading here is that both of those statements are false. I'm wondering why it matters at the 12B6 stage. It doesn't matter at the 12B6 stage because under either interpretation, it's still false and misleading. Right. That's why it was really hard for me to go back and try to retrace which statement you were pleading in your complaint. So, in case that helps clarify for anybody else on my side, that was really important to know. And I don't, I'm not sure that the blue brief made that point very clearly. I would say that if it's the interpretation that 99 virons of specific virons that we would kill, I don't think there's an allegation in the complaint that says that that's false. Okay. So, if there's any ambiguity. And then I, you know, how do you then square that with Moore, which says, Moore versus Trader Joe's. I know there's multiple Moores out there. That any ambiguity kind of, it seems like it goes to the producer. Moore versus Trader Joe's says that there's an, where there's an ambiguous statement, you look to Bell versus Publix, right? And then you look to the rest of the circumstances. And the Bell versus Publix court found that that issue couldn't be resolved on a motion to dismiss because the language was, in fact, ambiguous. Therefore, discovery was necessary in order to determine the meaning in the eyes of a reasonable consumer. If it pleases the court, I would like to reserve the rest of my time for a bottle. Yes, of course. Thank you. Good morning, Your Honors. Good morning. Anthony Hoppe, H-O-P-P, on behalf of Appellant Vijon, LLC. This court should affirm the district court's decision to dismiss this case with prejudice. The district court found correctly, twice, that reasonable consumers are not deceived by Vijon's product labels. And the plaintiff's reading of the labels was unreasonable and fanciful. To go to one of the things that Your Honor asked before, you have to look carefully at what the second amended complaint says. The plaintiff's claim is that the word germs is defined by Webster as an organism which causes disease. That's paragraph 6 of the second amended complaint, also paragraph 101, excerpts of record 24 and 34. The plaintiff then claims that the kills 99.99% of germs asterisk statement on the product label is misleading because the product does not kill 99.99% of disease-causing organisms. The SAC, the second amended complaint, does list certain germs which might be found on someone's hands, but it says that those germs are only examples. Examples of what is a good question. Examples of germs writ large, if you look at the way that the complaint sets it up. It is talking about all germs. Hold on. I think she just conceded we're talking about germs on hands. She conceded we're talking about germs on hands. That certainly supports what the district court found. The district court found that if you're talking just about germs that are on hands, then the product's label is not misleading to an ordinary consumer because an ordinary consumer would think when they walk in to buy hand sanitizer that it's going to kill the germs on their hands and not germs somewhere else. But I do submit. I think she's made that concession. What I'm trying to get my arms around is, is it correct that her, because I think there's an ambiguity for the back label. Just so you know, I'm importing the back label to the front because of the asterisks. Sure. At least for I'm only one of three. I'm only one-third of your problem, but, okay, or anybody's problem today. But if we get there, I think that there's a point that's been made by one of my colleagues that is well taken that you can read that two different ways. And hence, it seems to me to be important that we're at the 12B6 level, and I read the complaint as alleging, and that's all she has to do at this point, that both of those statements are false. Can you tell me? I think you're telling me now that I'm misreading the complaint. You don't see both of those allegations in the complaint? I see both of the allegations in the complaint, but the broader question is what germs are we talking about? And I think the way that the complaint reads is not just germs on hands, and she may have conceded that. That's not what the SAC says. It says germs generally. It doesn't mention germs that are found on hands, but it doesn't connect it up. The allegations in the complaint do not connect up. The germs that the complaint lists and common germs that may be found on people's hands. Am I supposed to be looking at footnote 4 and 5? Is that where you want me? ER 28? Footnote 4 and 5 in the brief? No, in the complaint? In the complaint? Well, it's 6 and 7. Okay. Footnote 6 and 7? Paragraph 6 and 7. Oh, paragraph 6. Okay. That's paragraph 6 and 7 of the second amended complaint, ER 24. Germs is commonly understood as an organism that causes disease. Defendant's products do not kill 99.99% or more than 99.99% of disease-causing organisms, full stop. That's what it says. We look at all of the complaints, right? Yes, we do. And then if we look at paragraph 104, I'm sorry, 107. Hang on. Where am I? I'm sorry. All right. Let's look at 103 and 104. It says the products do not kill certain germs, which comprise more than 1% of common germs. The products do not kill certain germs, which comprise more than 1% of harmful germs. But there again, it doesn't connect up to people's hands. And that's what the district court found. So the district court, as you correctly identified as an initial matter, said this is hands, people's hands, not all germs everywhere. I do not believe that the district court misread the complaint. Can you clear up what Vijan meant by that statement? Is it that it will kill 99% of common germ species? Or is it if there's 99 virus particles, they'll kill 99% of those particles? Certainly. The product has been tested. This isn't in the record, but just for clarification. The product has been tested against representative germs. There's a list of germs that the FDA has set out, which are representative of common organisms that a person can find on their hands. And this is in the Federal Register. I can supply the citation. It may be in our briefing below. But there's a list of organisms that the FDA believes are common in consumer context. The product has been tested against those germs hundreds and hundreds of times and will kill 99.99% of the germs of the organisms in any one of those samples in 15 seconds or less. So to your point, you're talking about virons. It's bacteria. If you subject bacteria, a sample of bacteria, to the product for 15 seconds, it will kill 99.99% of the germs in that sample. Now, why does that happen? It's alcohol. Alcohol dissolves protein. And alcohol dissolves, and most germs, certainly all bacteria, almost all bacteria as far as I know, and most viruses are made up of protein. So it will kill those. It's what it does. That's why alcohol is an effective disinfectant. That's why it's an alcohol-based hand sanitizer. So I'm not sure if that answers my question. So it will kill 99% of 100 viruses. If there's 100 species of germs or viruses, it will kill 99% of those. If there's 100 species, it depends on what the species are, right? So there are, and she identifies, there are certain species of germs the product doesn't kill. Those germs aren't common on people's hands. At least that's our submission. That's what the district court found. So will it kill Ebola? I don't know if it's been tested against Ebola. Will it kill, let's take an easier example, polio? Well, it hasn't been tested. So if you can have, you know, if you have 100 species and polio is in that species, it won't kill that. If it's common germs, the FDA's list of common germs, it will kill 99.99% of any one of those given germs that's in a sample. Okay, so then what do we take with, I think it's been pled that it was for viruses, that it is ineffective against CDEF, crypto, I forget the other ones, and then I think they plead that that is more than 0.01% of any common germs. They do, but they do not plead, and this is critical, they do not plead that that is more than 0.01% of the germs that a reasonable consumer could expect to find on their hands. They don't say that most consumers reasonably expect to find crypto, polio, HPV, and the specific germs that they list on their hands. They list those, and they say multiple times in their briefs and in their complaint that these are just examples of germs. They don't say that they're examples of germs. They're commonly found on people's hands. And the district court looked at the context of this, and under Moore v. Trader Joe's, that's what the district court's supposed to look at, the context. Someone walks into a convenience store and purchases hand sanitizer for the purpose of cleaning their hands, not cleaning, disinfecting, sanitizing their hands. And the district court found that with few exceptions, with few exceptions, and that's important, that the germs listed in the FAC are either not common, like polio, or not found on consumers' hands. And that does not create an issue of fact, and that does not shift the burden. So, but is your position then, if they did allege or did plead that those four represent 0.01% of common germs on hands, then they have a case? If the plaintiff's claimed that this product does not kill 99.99% of the germs that are commonly found on people's hands, we would have a different case. That is not this case. That is not what's plotted in the second amendment to this claim. So at ER 34, she pleads on the defendant's front panel representation that products kill 99.9% of 24 germs is false and misleading. At ER 37, it says that the statement on the back panel that the product is affected with, it eliminated more than 99.99. It still has five, I think it was 15 seconds, is false and misleading, although not a comprehensive list of common harmful germs and bacteria. The common germs are described. Common harmful germs and bacteria writ large. Common harmful germs and bacteria. This comes back to common germs and bacteria, and what you think is missing at ER 37 is on your hands. That's right. That's what the complaint does not say. It doesn't connect it up. There are pieces in the amended complaint that someone could try to fit together, but the second amendment doesn't connect up hands and the germs. It says that the germ says repeatedly, both in the briefing and in the second amendment complaint, that these germs are illustrations of something, but it never says illustrations of germs on hands. Is your primary argument that the front label itself is non-deceptive? Yes, Your Honor. Yes, the front label itself. It would be implausible and fanciful for it to have the potency of being able to kill 99.9% of all germs? That's right. Therefore, you're not arguing that the California law expects reasonable consumers to understand that the full context means asterisks to back label, and that qualifies the promise on the front. Your argument to us is that the front label itself is fanciful. The reading of the front label is fanciful, but the case law does say that additional language elsewhere can help clarify, augment, provide additional information. Well, I hadn't understood that in your oral presentation that's the argument you're making, but you're saying the case law does say that. What is your best California case that says a reasonable consumer with or without an asterisk is expected to refer to the back label? Terms and conditions, fine print, angled print, whatever. What's your best California case for that proposition? To answer your question, Denon v. Sandisk. But it doesn't say that the reasonable consumer is expected to refer to that. It says that the reasonable consumer may refer to that. That's additional information, additional context that the consumer can take into account. In this case, I would submit that the front label is clear and not deceptive, number one. If, Denon, this is your authority, will you make sure you say it's time to respond to Voting Council's citation of our Gerber decision? And I'll just quote the portion that interests me. The reasonable consumer should not be expected to look beyond misleading representations on the front of the box to discover the truth from the information contained in small print on the back. I will reserve time, Your Honor. If I may, just to address standing. No, I don't know if you could answer. Is there a different answer now? Absolutely. So, sorry. Again, Your Honor, if you don't mind. I think the question is very well taken. You've got Gerber as your toughest authority on the other side. You have Denon and Vote. What about Gerber? Gerber was, there was fruit on the label and the product didn't contain any fruit. That was the problem. The problem was that the front label was misleading. Wait, so you're taking the position nobody would believe your front label? No, no, no. Literally. I've been misunderstood, Your Honor. People believe the front label to mean that the product kills 99.99% of germs on their hands. And that's what it said. So, the rear label, if you want more information about what germs means, you can find it says many common germs, but I don't want to be misunderstood. I have not said that people won't believe the front label. The front label is clear. And the rear label, and it's not deceptive, which distinguishes Gerber. I'm trying to figure out how you're reconciling the position that you're making today, because it seems to me your oral argument is more from what I understood in your briefing. And it's certainly more from what I understood the district court relied upon. But if I've misunderstood our guest's question, please don't mind me. I am sorry to have misunderstood, Your Honor, if I may. Well, if it's our feeling, just run it by us one more time. Okay? Because it seems to me there's an inconsistent position about the front label. But the front label clearly states that the product kills 99.99% of germs on people's hands. That's not false or misleading because? Because it's hand sanitizer, and that's what it does. It kills 99.99% of germs on your hands. And the 99.99% statement must be taken in context of the big words, hand sanitizer. Okay, so your argument doesn't rely on what you just articulated, what I understand you to be saying. It doesn't rely on an asterisk or looking at the back? Certainly a reasonable consumer can look at the front label and understand what the product does. But under more, if there's additional information that the consumer wants, then inversely saying this does not say, Your Honor, does not say that the consumer must turn the product over and understand. It says that the consumer who needs additional information may use that information on the real label because it's indicated. Gerber is distinguishable because the label in Gerber was facially misleading. Can I ask, is there a universally accepted number of germs that are commonly found on hands? The FDA has set out a set of germs that are representative of germs that would commonly be found on hands. I don't know if anybody's calculated the total number of germs that could commonly be found on hands. But this product has been tested. How many germs are on that FDA report? There are 25 representative yeasts and bacteria. But again, they are representative of other organisms. And the FDA clearly says that these are representative because, as I said, it's alcohol. It dissolves the membranes themselves. And so any germ, which is made up of protein, will be killed by alcohol. That's why the doctor rubs alcohol on your arm. Are those viruses that the plaintiff has pled that is ineffective against on that list, on that FDA list? No, they're not because they're not expected to be. This is a list of the organisms the FDA thinks are relevant to consumer hand germs. So norovirus, CDEF, HPV are not on that list. Norovirus is a foodborne virus. HPV is primarily sexually transmitted. Polio, obviously, has been all but eradicated. Cryptosporidium is found in sewage. We're at 26, of course. Yes, yes, we are. And the district court did look at some of the information on those in order to determine whether a reasonable consumer would be concerned about those germs. Thank you, Your Honor. Any further questions? Thank you for your argument. The fact that there's substantial discussion here regarding the meaning of the label terms and the facts of the complaint demonstrates that this case was prematurely dismissed at the motion-to-dismiss stage. I'd like to clarify a couple of the things that were said by defendant. The list of germs that he's representing comes from the 1994 tentative final monograph from the FDA. It's a question of fact that those 25 species of bacteria are predominantly dealing with hospital-acquired infections. The things that are pled in plaintiff's complaint, however, are things that occur in everyday life like norovirus. All of them, as pled, are transmitted by hand. All of them, as pled, account for millions of cases of infection in the United States each year. Defendant and the district court would charge plaintiff with understanding, based on a label representation that says 99.99% of germs, which specific pathogens and viruses are and are not killed by the products. That is not the standard that is set by this court for an everyday, low-cost good for a reasonable consumer to understand what it means during the purchase process. If the front label said kills 99.99% of common household germs found in your hands, would you have a case? We would still have a case, Your Honor, because that would not be true. It doesn't kill. Because you've pled both. We've pled both. And as the discussion reveals today, it doesn't kill viruses that are commonly transmitted by hand and account for millions of cases of infection. But your opposing counsel says that you don't plead that it doesn't kill 99% of germs commonly found on hands. That is incorrect. I would direct the court's attention to ER 43, paragraph 176. We're talking about reliance under the standard. Plaintiff purchased the product for the particular purpose of sanitizing hands and killing germs and used and relied on the product for that purpose. Moreover, with respect to each of the four categories of germs that we've been discussing today, plaintiff specifically pleads that each category is transmitted by hand. Norovirus is transmitted by hand. But he's saying that you did not plead that they represent more than 99% of terms commonly found in your hands. Is that in your complaint? Yes, Your Honor. It is repeatedly in the complaint. Well, with respect to the specific germs, I can cite you to the paragraphs where we talk about it. Sorry. I apologize, Your Honor. I can point you to the paragraphs with respect to norovirus. That's at ER 26. That would be paragraph 23. With respect to cryptosporidium, also ER 26. I've seen that. You've alleged there's at least four viruses that it's ineffective on that are found on hands. And are transmissible by hand. But I just don't see the allegation that they represent more than 0.01% of germs commonly found on hands. Well, first of all, as stated by defendant, it's a hand sanitizer. That's what he opened with, right? So that would be germs on hand. In addition, plaintiff states that he and reasonable consumers relied on the products to kill germs on hands. That is the interpretation of the label statement that he posits in the second amended complaint. And it's plausible and specifically pled that a hand sanitizer would be used to kill germs on hands. And that would be the reasonable consumer expectation. Right. I guess because you're pleading there's only four specific germs that it is ineffective on. If there's a million germs that are commonly found on your hands, then that statement is 100% accurate. Because four is well below 0.01% of a million. The complaint also talks about a list of pathogens of concern from the Bodie Science Center. It describes 204 pathogens and says that 26% of them would not be killed by defendant's products. But, again, those are not germs that are commonly found on hands. That is a database that talks about hand hygiene and what would and wouldn't be killed by certain hygienic products. But, admittedly, Your Honor, this is all factual evidence that defendants would flesh out during discovery. Could you reallege that? I'm just wondering if we need to dismiss the prejudice. If you have a chance to amend it, would you be able to say that those four represent 0.01% of germs commonly found on your hands? I mean, I think what we could do is submit a scientific expert report that demonstrates that it doesn't kill 99.99% of common germs or germs on hands. That's not the pleading standard in this court. That was the question, whether, essentially, it would be futile. It would not be futile. We could make that allegation more clear in the complaint, and we could back it up with scientific evidence. Absolutely. Are there additional questions? Thank you so much for your argument. Both of you, it's a pleasure to hear arguable words. You're so well prepared. We appreciate it very much. We'll go on to the next piece on the calendar.
judges: Higginson, CHRISTEN, BUMATAY